UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————
ROBERT W. CABELL,                                      :

                              Plaintiff,               :          Case No. 09-cv-10134 (CM)

              - against -                              :

MARK ZIMMERMAN, President,                             :
ACTORS' EQUITY ASSOCIATION,                            :

                              Defendant.               :
—————————————————————————


## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

SPIVAK LIPTON LLP
*Attorneys for Defendants*
*Mark Zimmerman, President and*
*Actors' Equity Association*
1700 Broadway, 21st Floor
New York, NY 10019
Tel:   212-765-2100
Fax:   212-541-8954

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT............................................................................................................3

POINT I

PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIM FAILS
BECAUSE PLAINTIFF DOES NOT ALLEGE THAT HE REGISTERED
HIS COPYRIGHT AND HE DOES NOT ALLEGE IMPROPER USE OR
COPYING BY ACTORS' EQUITY ..........................................................3

A. Plaintiff Does Not Plead that He has Registered the "Pretty Faces" Video ............3

B. Plaintiff Fails to Allege That Actors' Equity Used His Copyrighted
Work in Violation of the Statute.............................................................5

C. Plaintiff Fails to Allege Improper Copying of His Copyrighted Work ...................7

POINT II

PLAINTIFF'S TORT CLAIMS SHOULD BE DISMISSED
PURSUANT TO THE DOCTRINE OF *MARTIN v. CURRAN* ....................................9

POINT III

PLAINTIFF'S LIBEL CLAIMS ARE UNTIMELY .................................................12

POINT IV

PLAINTIFF'S TORT CLAIMS SHOULD BE DISMISSED FOR
FAILURE TO PLEAD A PRIMA FACIE CASE......................................................13

A. Plaintiff Fails to State a Libel Claim .................................................................13

B. Plaintiff's Claim for "Unlawful Seizure of Property" Should Be Dismissed........16

C. Plaintiff's Claim for Tortious Interference With Contractual Relations
Should Be Dismissed.........................................................................16

D. Plaintiff's Claim for "Lost Business Opportunity" Should Be Dismissed............18

<u>POINT V</u>

PLAINTIFF SEEKS INAPPROPRIATE RELIEF ....................................................20

CONCLUSION .........................................................................................................21

## TABLE OF AUTHORITIES

**Cases**                                                                                  **Page**

Alternative Electrodes, LLC v. Empi, Inc.,
    597 F. Supp.2d 322 (E.D.N.Y. 2009) ........................................................................18

Ashcroft v. Iqbal,
    _ U.S._, 129 S. Ct. 1937 (2009) ...............................................................................3

Blakeman v. The Walt Disney Co.,
    613 F. Supp.2d 288 (E.D.N.Y. 2009) ........................................................................8

Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc.,
    194 F. Supp.2d 246 (S.D.N.Y. 2002) ........................................................................5

Cabell v. Actor's Equity Assoc.,
    Civil Court of the City of N.Y., County of N.Y., Index No. 16520/09 ......................10

Castle Rock Entm't Inc. v. Carol Publi'g Group, Inc.,
    150 F.3d 132 (2d Cir. 1998) .......................................................................................8

Chambers v. Time Warner,
    282 F.3d 147 (2d Cir. 2002) ...............................................................................10 n.4

Design Strategies, Inc. v. Davis,
    367 F. Supp.2d 630 (S.D.N.Y. 2005) ......................................................................18

Dillon v. City of New York,
    261 A.D.2d 34, 704 N.Y.S.2d 1 (1st Dep't 1999) ....................................................15

Do Denim, LLC v. Fried Denim, Inc.,
    634 F. Supp.2d 403 (S.D.N.Y. 2009) ........................................................................5

Duane Reade v. Local 338 Retail, Wholesale, Dep't Store Union,
    17 A.D.3d 277, 794 N.Y.S.2d 25 (1st Dep't 2005) ..................................................11

Einhorn v. Mergatroyd Prods.,
    426 F. Supp.2d 189 (S.D.N.Y. 2006) ......................................................................20

Ello v. Singh,
    531 F. Supp.2d 552 (S.D.N.Y. 2007) .................................................................14, 15

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.,
    499 U.S. 340, 111 S. Ct. 1282 (1991) ....................................................... 7, 8

Fischer v. Talco Trucking Inc.,
    No. 07-CV-4567, WL 5066902 (E.D.N.Y. Dec. 21, 2009) ..................................... 5 n.3

Fisher-Price, Inc. v. Well-Made Toy Mfg., Corp.,
    25 F.3d 119 (2d Cir. 1994) ................................................................................. 8

Frasier v. Adams-Sandler, Inc.,
    94 F.3d 129 (4th Cir. 1996) ............................................................................... 7

Guard-Life Corp. v. S. Parker Hardware Mfg.,
    50 N.Y.2d 183, 428 N.Y.S.2d 628 (1980) ............................................................ 17

Hammer v. Trendl,
    No. 02-cv-2462, 2003 WL 21466686 (S.D.N.Y. Jan. 18, 2003) ................................ 8

Hanley v. Sumitomo Bank,
    No. 90 Civ. 7407, 1993 WL 362388 (S.D.N.Y. Oct. 6, 1993) .............................. 19-20

Harris v. Mills,
    572 F.3d 66 (2d Cir. 2009) ................................................................................. 3

Hoesten v. Best,
    34 A.D.3d 143 (1st Dep't 2006) ......................................................................... 10

In re Literary Works in Elec. Databases Copyright Litig.,
    509 F.3d 116 (2d Cir. 2007),
    cert granted in part sub nom, Reed Elsevier, Inc. v. Muchnick,
    _U.S._, 129 S. Ct. 1523 (2009) ................................................................ 4-5, 5 n.3

Kirch v. Liberty Media Corp.,
    449 F.3d 388 (2d Cir. 2005) ......................................................................... 14, 18

Lama Holding Co. v. Smith Barney Inc.,
    88 N.Y.2d 413, 646 N.Y.S.2d 76 (1996) ......................................................... 16-17

Martin v. Curran,
    303 N.Y. 276 (1951) ........................................................................... 2, 9, 10, 12

M.J. & K. Co., Inc. v. Matthew Bender & Co.,
    220 A.D.2d 488, 631 N.Y.S.2d 938 (2d Dep't 1995) ..................................... 17, 18-19

Modeste v. Local 1199,
    38 F.3d 626 (2d Cir. 1994) ............................................................................... 11

Oriental Art Printing, Inc. v. Goldstar Printing Corp.,
    175 F. Supp.2d 542 (S.D.N.Y. 2001)
    aff'd in part, appeal dismissed in part,
    34 Fed. Appx. 401 (2d Cir. 2002).................................................................8-9

Pasqualini v. MortgageIT, Inc.,
    498 F. Supp.2d 659 (S.D.N.Y. 2007) ...............................................................12

Rather v. CBS Corp.,
    __ N.Y.3d ___, 886 N.Y.S.2d 121 (1st Dep't 2009)..........................................19

Reed Elsevier, Inc. v. Muchnick,
    _U.S._, 129 S. Ct. 1523 (2009) ....................................................................5 n.3

Roth v. United Federation of Teachers,
    5 Misc.3d 888, 787 N.Y.S.2d 603 (Sup. Ct. Kings County 2004) ......................11

Salemeh v. Toussaint,
    25 A.D.3d 411, 810 N.Y.S.2d 1 (1st Dep't 2006)..............................................11

Sharma v. Skaarup Ship Management Corp.,
    916 F.2d 820 (2d Cir. 1990) ...........................................................................17

Sony Corp. v. Universal City Studios, Inc.,
    464 U.S. 417, 104 S. Ct. 774 (1984) .............................................................6-7

Tortoso v. Metlife Auto & Home Ins. Co.,
    21 A.D.3d 276, 799 N.Y.S.2d 506 (1st Dep't 2005)..........................................15

Town of Massena v. Healthcare Underwriters Mutual Ins. Co.,
    98 N.Y.2d 435, 749 N.Y.S.2d 456 (2002)...................................................13-14

Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.,
    338 F.3d 127 (2d Cir. 2003) ...........................................................................8

Walsh v. Torres-Lynch,
    266 A.D.2d 817, 697 N.Y.S.2d 434 (4th Dep't 1999).......................................11

White Plains Coat & Apron Co.,
    8 N.Y.3d 422, 835 N.Y.S.2d 530 (2007)..........................................................17

**Statutes**

Copyright Act of 1976, as amended
      17 U.S.C. § 106 .................................................................................................5, 6
      17 U.S.C. § 411 .....................................................................................................4
      17 U.S.C. § 412 ...................................................................................................20

Federal Rules of Civil Procedure

      Rule 12(b)(1) ...........................................................................................1, 3, 5 n.3
      Rule 12(b)(6) ...........................................................................................1, 3, 5 n.3

N.Y. Civil Practice Law & Rules
      Section 203(a)......................................................................................................12
      Section 215(3).......................................................................................................12

N.Y. General Assocs. Law
      Section 13 .........................................................................................................1 n.1

**References**

BLACK'S LAW DICTIONARY (8th ed. 2004)...............................................................16

3 Robert L. Haig, Business & Commercial Litig. in Federal Courts § 39.3 (2004)......................18

18 C.J. S. Copyrights § 66 (2009) ...........................................................................8

PRELIMINARY STATEMENT

Defendants Actors' Equity Association ("Actors' Equity" or "AEA") and Mark

Zimmerman, named as President of AEA[1] (collectively, "Defendants"), submit this

memorandum in support of their motion to dismiss the Complaint ("Compl.") in this action

under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff Robert Cabell ("Cabell"), having attempted and failed to bring an action against

Actors' Equity in the Civil Court for the City of New York, County of New York, now brings

what appears to be substantially the same action in federal court.  Plaintiff alleges that he owns

all rights to a musical video entitled "PRETTY FACES," which he posted on the Internet via the

website YouTube.  Plaintiff alleges that he also posted on YouTube videos he made of musicals

entitled "ZANNA DON'T" and "SANITATION CHRONICLES" with the permission of those

copyright holders.  Plaintiff alleges that he suffered monetary damages and injury to his

reputation when Defendants took steps to have YouTube remove said videos from its website.

As shown below, each of his many claims fails as a matter of law.

---

[1] The Summons is addressed to "Robert Zimmerman, President." In the Complaint, Plaintiff
names Mark Zimmerman, in his capacity as President of Actors' Equity, as a Defendant.
However, Zimmerman is no longer the President of Actors' Equity, having resigned from that
post effective December 11, 2009, prior to the December 18, 2009 service of the Complaint.
(Declaration of Gillian Costello, dated January 7, 2010, ¶ 2.) State law claims may only be
brought against a union by naming its president or treasurer. N.Y. General Assocs. Law § 13. It
is presumably for this reason that Plaintiff sues Actors' Equity and Mark Zimmerman. As noted
above, however, Plaintiff has improperly named the *former* President of Actors' Equity. The
State law causes of action should be dismissed on this ground.

Plaintiff's First Cause of Action, which alleges copyright infringement, fails because Plaintiff does not allege that he has registered his copyright, and does not allege facts that would give rise to a claim of copyright infringement, insofar as he fails to plead (1) that Actors' Equity used or authorized use of his copyrighted work in a statutorily-prohibited manner, or (2) that Actors' Equity copied any of his copyrighted material.

Plaintiff's Second through Sixth Causes of Action, which allege a host of intentional torts, fail to state a claim because Plaintiff does not—as he cannot—allege that Actors' Equity's acts were authorized or ratified by *each member* of Actors' Equity as required by the longstanding doctrine enunciated by the New York Court of Appeals in <u>Martin v. Curran</u>, 303 N.Y. 276 (1951).

Plaintiff's Second, Third, and Fourth Causes of Action sounding in libel are also barred by the one-year statute of limitations under New York law. His claims for "lost business opportunity" and tortious interference with contractual relations in the Fifth[2] and Sixth Causes of Action, respectively, are likewise time-barred because they are essentially claims for harm to Plaintiff's reputation.

Finally, Plaintiff fails to plead facts sufficient to state a claim for "libel," "unlawful seizure of property," "lost business opportunity," and "interference with contractual relations."

---

[2] The Complaint contains two causes of action designated as "Fifth Cause of Action." The first such "Fifth Cause of Action," at paragraphs 33 through 39, is for alleged "Lost Business Opportunity." The second "Fifth Cause of Action," at paragraphs 40 and 41, alleges "Unlawful seizure of property."

2

Accordingly, his Second through Sixth Causes of Action should be dismissed. In sum, none of Plaintiff's claims can withstand a motion to dismiss; the Complaint should therefore be dismissed in its entirety.

## ARGUMENT

### POINT I

#### PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIM FAILS BECAUSE PLAINTIFF DOES NOT ALLEGE THAT HE REGISTERED HIS COPYRIGHT AND HE DOES NOT ALLEGE IMPROPER USE OR COPYING BY ACTORS' EQUITY

Plaintiff's First Cause of Action, for copyright infringement, should be dismissed on two principal grounds. First, the claim should be dismissed for lack of jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because Plaintiff does not allege that he has registered the copyright of the allegedly infringed material. Second, the claim should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, because Plaintiff fails to plead that Actors' Equity ever used or copied any work in which he has a valid copyright. Because Plaintiff fails to "state a claim for relief that is plausible on its face," his copyright infringement claim cannot survive a motion to dismiss. See Ashcroft v. Iqbal, _ U.S._, 129 S. Ct. 1937, 1949 (2009); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

A.    Plaintiff Does Not Plead that He Has Registered the "Pretty Faces" Video

Plaintiff's copyright infringement claim should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedures because, under current Second Circuit precedent, the Court

3

lacks subject matter jurisdiction of his copyright. For subject matter jurisdiction to attach, Plaintiff must establish that he has registered or attempted to register his copyright with the United States Copyright Office. Plaintiff makes no allegation that he registered or attempted to register the allegedly infringed material. Rather, he makes a conclusory statement that he "owns all right, title and interest in and to the stage musical entitled 'PRETTY FACES', including, without limitation, all copyrights, treatments, photoplays, and audio and/or video recordings thereof." (Compl. ¶ 4.)

> 17 U.S.C. § 411(a) provides in pertinent part:
>
> *[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.* In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights.

(Emphasis added.)

"[S]ection 411(a)'s registration requirement limits a district court's subject matter jurisdiction to claims arising from registered copyrights only." In re Literary Works in Elec. Databases Copyright Litig., 509 F.3d 116, 121-22 (2d Cir. 2007), cert granted in part sub nom.,

Reed Elsevier, Inc. v. Muchnick, _U.S._, 129 S. Ct. 1523 (2009)[3]; Do Denim, LLC v. Fried

Denim, Inc., 634 F. Supp.2d 403, 405-06 (S.D.N.Y. 2009). In the absence of registration,

Plaintiff's copyright infringement claim should be dismissed. See In re Literary Works, 509 F.3d

at 124 n.5 ("a copyright claim does not exist absent registration or preregistration").


B.     Plaintiff Fails to Allege That Actors' Equity Used His Copyrighted Work
       in Violation of the Statute

Plaintiff labels his First Cause of Action "Copyright infringement" (Compl., First Cause

of Action), but "conduct does not constitute infringement unless that conduct 'conflicts with one

of the specific exclusive rights conferred by the copyright statute.' . . . Those 'exclusive rights'

apply to reproduction of, preparation of derivative works based on, distribution of copies of,

public performance of, or public display of the copyrighted work." Briarpatch Ltd. L.P. v. Geisler

Roberdeau, Inc., 194 F. Supp.2d 246, 256 (S.D.N.Y. 2002) (citing 17 U.S.C. § 106) (citations

omitted).

---

[3] The petition for writ of certiorari in Reed Elsevier was granted on the question: "Does 17
U.S.C. § 411(a) restrict the subject matter jurisdiction of the federal courts over copyright
infringement actions?" _U.S._, 129 S. Ct. 1523. The Supreme Court heard oral argument in
Reed Elsevier on October 7, 2009, but as of this date has not issued its decision. Defendants
wish to assert and preserve their defense under Rule 12(b)(1), but acknowledge that the Supreme
Court's decision could affect the viability of the Second Circuit's holding regarding subject
matter jurisdiction in In re Literary Works. In that regard, Defendants respectfully submit that
Plaintiff's copyright infringement claim additionally cannot survive pursuant to Rule 12(b)(6),
for the reasons set forth herein. See also Fischer v. Talco Trucking Inc., No. 07-CV-4567, 2009
WL 5066902 (E.D.N.Y. Dec. 21, 2009) (dismissing copyright infringement claim pursuant to
Rule 12(b)(6) because the plaintiff had not registered his copyright).

Plaintiff claims that "Defendant has infringed Plaintiff's copyright in and to 'PRETTY

FACES'" (Compl. ¶ 12), by "notif[ying] YouTube, Inc., the parent company and owner of

YouTube that the Pretty Faces Video contained material which infringed the copyright of an

unknown third party" (id. ¶ 6). Plaintiff further claims that "[a]s a result of the notification

described in paragraph 6 above, YouTube, Inc. removed and/or disabled access by users of

YouTube to the Pretty Faces Video on or about September 5, 2007." (Id. ¶ 7.) He claims to have

sustained damages as a result. (Id. ¶ 12.)


Plaintiff fails to plead facts that could support a finding that Actors' Equity infringed his

copyright within the meaning of the Copyright Act. "Anyone who violates one of the exclusive

rights of the copyright owner, that is, anyone who trespasses into his exclusive domain *by using or*

*authorizing the use of the copyrighted work in one of the five ways set forth in the statute, is an*

*infringer of the copyright*." Sony Corp. v. Universal City Studios, Inc., 464 U.S. 417, 433, 104 S.

Ct. 774, 784 (1984) (internal quotation marks and citations omitted) (emphasis added). As noted

above, the statute gives the owner of a copyright "exclusive rights to do and to authorize any of

the following: (1) to reproduce the copyrighted work . . . (2) to prepare derivative works . . . (3) to

distribute copies or phonorecords of the copyrighted work to the public . . . (4) . . . to perform the

copyrighted work publicly; and (5) . . . to display the copyrighted work publicly." 17 U.S.C. §

106.


Plaintiff quite simply does not claim that Actors' Equity "us[ed] or authorize[ed] the use

of the copyrighted work in one of the five ways set forth in the statute." Sony Corp., 464 U.S. at

6

433, 104 S. Ct. at 784. Indeed, Plaintiff fails to allege that Actors' Equity ever *used* or *authorized the use of* any of his work in any way. In the absence of such statutorily-prohibited use, Plaintiff cannot maintain a claim for copyright infringement. "The plain language of the copyright law requires that an infringer do or authorize reproduction, printing, or other use of the copyrighted material." Frasier v. Adams-Sandler, Inc., 94 F.3d 129, 130 (4th Cir. 1996) (finding that defendant "cannot be held liable as an infringer" where plaintiff "does not claim that [defendant] in any way used or copied his photographs"); Briarpatch Ltd., 194 F. Supp.2d at 256 (finding that "[f]ederal subject matter jurisdiction has not been established" and dismissing actions where "[n]one of the 'exclusive rights' . . . was violated"). In sum, Plaintiff must, but does not, submit facts by which a plausible claim could be established that Actors' Equity used or authorized use of his copyrighted material. His copyright claim should therefore be dismissed.

C.    Plaintiff Fails to Allege Improper Copying of His Copyrighted Work

Much as Plaintiff fails to allege that Actors' Equity "used" or "authorized use" of his copyrighted work, Plaintiff fails to allege that Actors' Equity copied his work. The failure to allege such copying mandates dismissal of his copyright infringement claim.

"To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361, 111 S. Ct. 1282, 1296 (1991). As noted above, Plaintiff fails to allege that he has registered his copyright. Plaintiff fails, in

addition, to plead the second element of copyright infringement: "copying of constituent

elements of the work that are original." 499 U.S. at 361, 111 S. Ct. at 1296.

"[I]n order to meet the second requirement of the Feist analysis, plaintiff must

demonstrate the following: (1) the defendant has actually copied the plaintiff's work; *and* (2) the

copying is illegal because a substantial similarity exists between the defendant's work and the

protectable elements of plaintiff's." Blakeman v. The Walt Disney Co., 613 F. Supp.2d 288, 304

(E.D.N.Y. 2009) (internal quotation marks omitted) (quoting Fisher-Price, Inc. v. Well-Made

Toy Mfg., Corp., 25 F.3d 119, 122-23 (2d Cir. 1994)).

Thus, while "[c]opyright infringement requires actionable copying, which is unauthorized

copying of constituent elements of the copyrighted work," 18 C.J.S. Copyrights § 66 (2009),

Plaintiff does not claim that Actors' Equity copied any work in which he has a valid copyright.

As such, his copyright infringement claim should be dismissed. See Tufenkian Import/Export

Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 131 (2d Cir. 2003) ("copyright

infringement is established when the owner of a valid copyright demonstrates unauthorized

copying") (quoting Castle Rock Entm't Inc. v. Carol Publi'g Group, Inc., 150 F.3d 132, 137-38

(2d Cir. 1998) (internal quotation marks omitted); see also Hammer v. Trendl, No. 02-CV-2462,

2003 WL 21466686, at *3 (E.D.N.Y. Jan. 18, 2003) (denying preliminary injunction where

"plaintiff fails to provide any allegations that the defendant actually copied the plaintiff's work");

Oriental Art Printing, Inc. v. Goldstar Printing Corp., 175 F. Supp.2d 542, 548 (S.D.N.Y. 2001)

(finding that plaintiffs "cannot establish the second element of the prima facie test: evidence of

copying of the design's original constituent elements"), aff'd in part, appeal dismissed in part, 34

Fed. Appx. 401 (2d Cir. 2002).


Plaintiff's claim is that Defendant notified YouTube that a video he posted was infringing

on a copyright. (See Compl. ¶¶ 6-12.) This strained assertion of copyright infringement cannot

stand, and the claim should be dismissed.


POINT II

PLAINTIFF'S TORT CLAIMS SHOULD BE DISMISSED<br>PURSUANT TO THE DOCTRINE OF MARTIN v. CURRAN

Plaintiff's State law tort claims for libel (in his Second, Third, and Fourth Causes of

Action), lost business opportunity (in his first labeled Fifth Cause of Action), unlawful seizure of

property (in his second labeled Fifth Cause of Action), and tortious interference with contractual

relations (in his Sixth Cause of Action) should be dismissed because the Complaint contains no

allegations that all of Actors' Equity's members either authorized or ratified the alleged tortious

conduct after having actual notice thereof, as is required under well-settled New York law. See

Martin v. Curran, 303 N.Y. 276, 279-80 (1951).


Indeed, Plaintiff previously filed a lawsuit against Actors' Equity in the Civil Court of the

City of New York, County of New York that was dismissed in part on the principle of Martin v.

Curran. In its decision dismissing that action, which Plaintiff appends to his Complaint as


9

Exhibit C,[4] the Civil Court noted that "a party cannot 'recover against a labor union for tortious acts committed by one of its members absent a demonstration that such acts were authorized or ratified by all of the union's members.'" (Cabell v. Actor's Equity Assoc., Index No. 16520/09, quoting Hoesten v. Best, 34 A.D.3d 143 (1st Dep't 2006).)  Thus, even assuming *arguendo* that Plaintiff has stated a prima facie case for any of the underlying tortious acts—which he has not— such claims cannot be brought against Actors' Equity under the longstanding doctrine of Martin v. Curran, as Plaintiff is aware.

The plaintiff in Martin v. Curran alleged that various union officers libeled him in the official union newsletter.  In dismissing the claim against the union representatives, the New York Court of Appeals reasoned that:

> A voluntary, unincorporated membership association is neither a partnership nor a corporation.  It is not an artificial person, and has no existence independent of its members.  No agency of one member for another is implied.  A part of the members of a voluntary organization cannot bind the others without their consent before the act which it is claimed binds them is done, or they, with full knowledge of the facts, ratify and adopt it.

303 N.Y. at 280 (citations and internal quotation marks omitted).

It is well-settled that claims for alleged tortious conduct brought under New York law against unions and their representatives in their representative capacities must allege that each and every individual member of the union either authorized or ratified the complained-of

---

[4] "A Complaint is deemed to include any written instrument attached to it as an exhibit." Chambers v. Time Warner, 282 F.3d 147, 152 (2d Cir. 2002).

conduct. Modeste v. Local 1199, 38 F.3d 626, 627 (2d Cir. 1994) ("[S]tate law makes an

unincorporated association liable for the torts of its members only where the unlawful acts are

authorized or ratified by *each* member." (Emphasis added.)); Salemeh v. Toussaint, 25 A.D.3d

411, 411, 810 N.Y.S.2d 1, 1-2 (1st Dep't 2006) (affirming dismissal of intentional tort claims

against union because plaintiff "failed to plead that the *entire* membership of [the union]

authorized in advance, or subsequently ratified" the alleged conduct (emphasis added)); Duane

Reade v. Local 338 Retail, Wholesale, Dep't Store Union, 17 A.D.3d 277, 278, 794 N.Y.S.2d 25,

26 (1st Dep't 2005) (affirming dismissal of tort claims against a union and individual union

representatives where plaintiff "failed to plead that *each* individual union member authorized or

ratified" the alleged unlawful conduct (emphasis added)); Walsh v. Torres-Lynch, 266 A.D.2d

817, 818, 697 N.Y.S.2d 434, 435 (4th Dep't 1999) (ordering dismissal of complaint alleging

intentional infliction of emotional distress where plaintiff failed to allege authorization or

ratification of conduct by individual union members); Roth v. United Fed. of Teachers, 5

Misc.3d 888, 896, 787 N.Y.S.2d 603, 609-10 (Sup. Ct. Kings County 2004) (dismissing

defamation claim against union and individual in representative capacity where plaintiff failed to

demonstrate that allegedly defamatory statements were authorized or ratified by *entire*

membership of union).


Here, Plaintiff does not allege that all of Actors' Equity's members had *any* knowledge,

let alone full knowledge, of any tortious conduct on the part of Actors' Equity. Moreover,

Plaintiff certainly fails to allege (because he cannot) that each and every member of the Union

authorized or ratified any tortious conduct on behalf of Actors' Equity. The stringent pleading

requirements established by the Court of Appeals in <u>Martin v. Curran</u>, however, require Plaintiff

to so allege, and his failure to do so here should be fatal to each of his State law claims.

POINT III

PLAINTIFF'S LIBEL CLAIMS ARE UNTIMELY

Plaintiff's libel claims in his Second, Third, and Fourth Causes of Action are barred by

the applicable statute of limitations. While libel claims under New York law must be

commenced within one year of the accrual of the claim (CPLR §§ 203(a), 215(3)), Plaintiff

alleges that the alleged libelous acts occurred in or around September 2007 (<u>see</u> Compl. ¶¶ 8, 9,

18, 19, 21)), well over one year before the December 11, 2009 filing of the instant action.

Plaintiff's libel claims should therefore be dismissed.


Plaintiff's claim for alleged "Lost Business Opportunities" and "Tortious interference

with contractual relations," set forth in his (first) Fifth and Sixth Causes of Action, respectively,

should likewise be dismissed as time-barred. With regard to both claims, Plaintiff alleges that as

a result of Actors' Equity's alleged interference he "has been defamed and suffered substantial

damage to his personal and professional reputation." (Compl. ¶¶ 35, 43.) However, "New York

courts have consistently ruled that a claim which is ostensibly based upon the intentional torts of

interference with advantageous or contractual relations, but which alleges injury to reputation, is

a disguised defamation claim and subject to a one-year limitations period under CPLR 215(3)."

<u>Pasqualini v. MortgageIT, Inc.</u>, 498 F. Supp.2d 659, 670 (S.D.N.Y. 2007) (internal quotation

marks and citation omitted) (dismissing tortious interference claim as untimely under one-year

12

statute of limitations for defamation where claim was "based wholly on [defendant's] dissemination of negative statements about [plaintiff] and the resulting harm to her professional reputation").


POINT IV

PLAINTIFF'S TORT CLAIMS SHOULD BE DISMISSED
FOR FAILURE TO PLEAD A PRIMA FACIE CASE

A.    Plaintiff Fails to State a Libel Claim

Plaintiff's conclusory allegations that he was libeled cannot stand.  Plaintiff claims that "Defendant notified YouTube, Inc. . . . that the Pretty Faces Video contained material which infringed the copyright of an unnamed third party." (Compl. ¶ 6.)  Plaintiff then makes the conclusory statement that "Defendant's notification to YouTube, Inc. that Plaintiff was a copyright infringer constitutes a false statement of fact about Plaintiff." (Compl. ¶ 14.)  In support of this claim, Plaintiff attaches an e-mail to *him* from YouTube which states that "this material is infringing." (Compl. Ex. A.)


Plaintiff's allegations are insufficient as a matter of law to establish a claim of libel.  The New York Court of Appeals has stated that:

> Defamation is defined as a false statement that exposes a person to public contempt, ridicule, aversion or disgrace.  A party alleging defamation must allege that the statement is false. . . . Where the party alleging defamation is not a public figure, a showing of common-law malice, or ill will, is necessary.

13

Town of Massena v. Healthcare Underwriters Mutual Ins. Co., 98 N.Y.2d 435, 444, 749

N.Y.S.2d 456, 460 (2002) (internal citations and quotation marks omitted).


Thus, while the allegedly false statement must expose Plaintiff to contempt, ridicule,

aversion, or disgrace, id., Plaintiff pleads no facts so indicating.  Further, the Defendant's

conduct of which Plaintiff complains is the notification to "YouTube that the *Pretty Faces Video*

contained material which infringed the copyright of an unnamed third party." (Compl. ¶ 6.)  It is

an unsupported leap to say that this statement *about a video* exposed Plaintiff to public contempt,

ridicule, aversion, or disgrace.  Rather, to state a libel claim, Plaintiff must establish "that a

defamatory statement of fact was made *concerning [Plaintiff]*."  Ello v. Singh, 531 F. Supp.2d

552, 575 (S.D.N.Y. 2007) (emphasis added); see also Kirch v. Liberty Media Corp., 449 F.3d

388, 398 (2d Cir. 2006) ("[i]t is essential in making out a prima facie case in libel to prove that

the matter is published of and concerning the plaintiff").  Plaintiff later alleges that Defendant

notified YouTube that "Plaintiff was a copyright infringer." (Compl. ¶ 14.)  However, "[a]

pleading is only sufficient if it adequately identifies the purported communication." Ello, 531 F.

Supp.2d at 575.  Plaintiff's differing characterizations of the communication at issue give rise to

confusion and do not sufficiently identify the purported communication.  Indeed, Plaintiff

identifies his claims as "libel," but it is not clear that the alleged communication or

communications of which he complains was or were in writing.


Furthermore, as Plaintiff does not allege that he is a public figure, common-law malice or

ill-will is required to succeed on the libel claim.  See Town of Massena, 98 N.Y.2d at 444, 749

14

N.Y.S.2d at 460; see also Tortoso v. Metlife Auto & Home Ins. Co., 21 A.D.3d 276, 279, 799

N.Y.S.2d 506, 509 (1st Dep't 2005) (where waitresses claiming defamation "were not public

figures, in order to recover on their cause of action for defamation they would have to make a

showing of common-law malice, or ill-will") (internal quotation marks and citation omitted)).

"Common-law malice is based on the traditional concept of spite or ill will." Ello v. Singh, 531

F. Supp.2d at 576 (quotation marks omitted.)  Plaintiff alleges neither.  "To establish common-

law malice, Plaintiff must show that [the defendant's] ill will towards Plaintiff was the one and

only cause for publication." Id. (internal quotation marks and citation omitted).  In other words,

Plaintiff must show that Actors' Equity published false statements "solely to harm" him, see id.,

and he must plead personal animus, id. at 577.  He does not so plead.  Rather, Plaintiff alleges

only that "Defendant was at fault since Defendant was negligent and did not perform the proper

due diligence to back up its claim that Plaintiff was a copyright infringer." (Compl. ¶ 14.)

Indeed, Plaintiff's allegation that an Actors' Equity representative both stated that the notification

to YouTube "was the result of an erroneous reporting" and issued "an express apology" (Compl.

¶ 10), would directly contradict any claim of spite or ill will.


"Courts will not strain to find defamation where none exists." Dillon v. City of New

York, 261 A.D.2d 34, 38, 704 N.Y.S.2d 1, 5 (1st Dep't 1999) (internal citations and quotation

marks omitted).  Plaintiff's claims for libel should be dismissed.

B.    Plaintiff's Claim for "Unlawful Seizure of Property" Should Be Dismissed

Plaintiff's "kitchen-sink" approach to pleading is typified by his (second) Fifth Cause of

Action (Compl. ¶¶ 40-41), which is styled as a claim for "unlawful seizure of property." This

claim fails because, assuming that there is such a tort under New York law—and it is not clear

that there is—Plaintiff fails to plead any facts to support his claim that Actors' Equity "illegally

appropriated and seized" (Compl. ¶ 41), any of his property. Appropriation and seizure require

the assumption of control and possession over something or someone, and Plaintiff does not and

cannot claim any such thing. The tort of "appropriation" is defined as "[a]n invasion of privacy

whereby one person takes the name or likeness of another for commercial gain." BLACK'S LAW

DICTIONARY 110 (8th ed. 2004). "Seizure" is "[t]he act or instance of taking possession of a

person or property by legal right or process." Id. at 1389. Plaintiff alleges neither here.

C.    Plaintiff's Claim for Tortious Interference With Contractual Relations Should Be
      Dismissed

Plaintiff's Sixth Cause of Action, for alleged tortious interference with contractual

relations, should be dismissed because Plaintiff does not plead the elements of such a claim. A

claim for tortious interference with contractual relations "requires the existence of a valid

contract between the plaintiff and a third party, defendant's knowledge of that contract,

defendant's intentional procurement of the third-party's breach of the contract without

justification, actual breach of the contract, and damages resulting therefrom." Lama Holding Co.

v. Smith Barney Inc., 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 82 (1996). "[M]ere contentions that

third parties cancelled contracts with [plaintiff] because of the alleged defamatory remarks made

by [defendants], offered with no factual basis to support the allegations, [i]s insufficient to state a

cause of action for tortious interference with contractual relations." <u>M.J. & K. Co., Inc. v.</u>

<u>Matthew Bender & Co.,</u> 220 A.D.2d 488, 490, 631 N.Y.S.2d 938, 940 (2d Dep't 1995). Here, it

is not even clear that Plaintiff claims that third parties cancelled contracts with Plaintiff. <u>See</u>

<u>Lama Holding Co.,</u> 88 N.Y.2d at 425, 646 N.Y.S.2d at 82 (dismissing claim where there was "no

allegation that third party "in fact breached its contract.") Instead, he complains of a denial of a

"promotional outlet for his work," a loss of unidentified "existing business," and unspecified

damage to his reputation. (Compl. ¶ 43.)


        As a threshold deficiency, with regard to "Pretty Faces," Plaintiff fails to plead the

existence of any contract with YouTube or any other entity covering the stage musical. <u>See</u>

<u>White Plains Coat & Apron Co.,</u> 8 N.Y.3d 422, 426, 835 N.Y.S.2d 530, 532 (2007) (stating

elements of claim). From that pleading deficiency flows the failure to plead Actors' Equity's

alleged (1) "knowledge of that contract," <u>see</u> <u>Guard-Life Corp. v. S. Parker Hardware Mfg.,</u> 50

N.Y.2d 183, 193, 428 N.Y.S.2d 628, 634 (1980) ("threshold predicate for any claim of tortious

interference [is] that the alleged tort-feasor knew that his competitor had a contract with the third

party"), and (2) "intentional procurement" of a breach of such contract, <u>see</u> <u>Sharma v. Skaarup</u>

<u>Ship Management Corp.,</u> 916 F.2d 820, 828 (2d Cir. 1990) ("[i]ntentional procurement of a

breach is an essential element of the tort of interference with contractual relations"). Nor can

there be an "actual breach of the contract," where no contract is alleged.


                                    17

Plaintiff alleges that he "had a services agreement with the copyright holders of the stage musical[s] entitled 'ZANNA DON'T'" and "the SANITATION CHRONICLES" (Compl. ¶¶ 16, 25) pursuant to which Plaintiff was hired to and did film and edit performances of the shows (Compl. ¶¶ 16, 25). Plaintiff nonetheless fails to allege that Actors' Equity had knowledge of such services agreements. As a result, Plaintiff does not and cannot allege that Actors' Equity "intentionally procured" any breach of such agreements. See Alternative Electrodes, LLC v. Empi, Inc., 597 F. Supp.2d 322, 339-40 (E.D.N.Y. 2009). Again, it is not clear from the Complaint that these services agreements were breached.

D.    Plaintiff's Claim for "Lost Business Opportunity" Should Be Dismissed

Plaintiff's Fifth Cause of Action, for alleged Lost Business Opportunity, should be dismissed. "Lost business opportunity" is typically a category of damages. See Design Strategies, Inc. v. Davis, 367 F. Supp.2d 630, 642 (S.D.N.Y. 2005) (quoting 3 Robert L. Haig, Business & Commercial Litig. in Federal Courts § 39.3 (2004) ("Various elements of compensatory damages include lost profits, *lost business opportunities*" (emphasis added).)

Insofar as this claim is one for "loss of prospective business relations" (see Compl. ¶ 37), Plaintiff must allege that (1) he had a business relationship with a third party; (2) Defendant knew of that relationship and intentionally interfered with it; (3) Defendant acted solely out of malice, or used dishonest, unfair, or improper means; and, (4) Defendant's interference caused injury to that relationship. Kirch, 449 F.3d at 400. This tort "applies to those situations where the third party would have entered into or extended a contractual relationship with plaintiff but

18

for the intentional and wrongful acts of the defendants." <u>M.J. & K. Co.</u>, 220 A.D.2d at 490, 631

N.Y.S.2d at 940.  Again, Plaintiff fails to allege Actors' Equity knowledge of a business

relationship and intentional interference therewith.


Plaintiff alleges that "[a]s a result of YouTube, Inc.'s removal and disabling of the Pretty

Faces Video . . . Plaintiff and the Producers were prohibited from utilizing YouTube in their

pitches, putting a chilling effect on their entire promotional efforts at and subsequent to the

Festival [of New Musicals]." (Compl. ¶ 34.)  Plaintiff further claims that "despite the critical

success of the production and cast album of 'PRETTY FACES', the show has not been produced

or published in the United States" which has resulted in "lost royalties and/or licensing fees."

(Compl. ¶¶ 35, 39.)  In support of this claim, Plaintiff appends to the Complaint an undated

notice indicating, among other things, that "Pretty Faces" was "an official selection of The New

York Musical Theater Festival" in 2004, <u>three years before</u> Actors' Equity allegedly took the

actions of which he complains. (<u>See</u> Compl. Exh. E at 2.)  In addition, he claims that "Plaintiff

has been successful outside the jurisdiction of Defendant in licensing the property on an

international basis." (Compl. ¶ 36.)  Plaintiff fails to note that YouTube has international reach.

Thus, Plaintiff's claim that any action by Defendant led to his alleged "lost business opportunity"

is pure speculation and cannot support his claim. <u>See</u> <u>Rather v. CBS Corp.</u>, ___ N.Y.3d ___, 886

N.Y.S.2d 121, 125 (1st Dep't 2009) (dismissing claim of lost business opportunities where "it

would be speculative to conclude that any action taken by [defendant] would have alone

substantially affected [plaintiff's] market value at that time"); <u>see also</u> <u>Hanley v. Sumitomo</u>

19

Bank, No. 90 Civ. 7407, 1993 WL 362388, at *3 (S.D.N.Y. Oct. 6, 1993) ("any award for lost business opportunities would . . . be purely speculative as to amount.").


POINT V

PLAINTIFF SEEKS INAPPROPRIATE RELIEF

Finally, it is noted that Plaintiff "demands judgment against Defendant" that is in fact directed against *YouTube*, a non-party.  For instance, he seeks "immediate retraction and removal of the labels and or notices from all applicable pages on YouTube," "removal of all blocks by YouTube of the Videos," and "a conspicuously-placed posted notice from YouTube expressly disclosing YouTube's apology to Plaintiff for the content of the notices." (See Compl., WHEREFORE clause.)  No such relief can be granted as against Actors' Equity.


Moreover, in Einhorn v. Mergatroyd Prods., 426 F. Supp.2d 189, 196-97 (S.D.N.Y. 2006), the court, relying on 17 U.S.C. § 412(1), dismissed claims for statutory damages and attorneys' fees for alleged infringements that occurred prior to the effective date of the copyright registration at issue.  As shown above, Plaintiff does not and cannot state a claim for copyright infringement, but in any event his failure to allege registration of his copyright also precludes him from receiving statutory damages and attorney's fees. (See Compl. WHEREFORE clause, ¶ 2 (seeking "statutory damages of $150,000.00") and ¶ 5 (seeking attorney's fees).)

20

CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety.

Dated: New York, New York
       January 7, 2010

                                Respectfully submitted,

                                SPIVAK LIPTON LLP
                                Attorneys for Defendants
                                1700 Broadway, 21st Floor
                                New York, New York  10019
                                (212) 765-2100

                         By:                                
                                  Gillian Costello (GC 0151)

21