UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—— —— —— —— —— —— —— ——x

ROBERT CABELL,

Plaintiff,

-against-

MARK ZIMMERMAN, President,
ACTORS' EQUITY ASSOCIATION,

Defendant.

—— —— —— —— —— —— —— ——x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _3_|12|10

09 Civ. 10134 (CM)

**DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

McMahon, J.:

## BACKGROUND

Robert Cabell ("Plaintiff") alleges that Dwane M. Upp, on behalf of the Actors'

Equity Association ("AEA" or "Defendant") improperly caused his proprietary material

to be blocked from YouTube.  Specifically, Plaintiff alleges that Defendant caused

YouTube to "remove[ ] and/or disable[ ] access" to his video, "Pretty Faces."  Plaintiff

further alleges that Defendant improperly caused YouTube to remove two other videos,

"Zanna Don't" and "Sanitation Chronicles" from its website, even though he posted those

videos with the permission of their copyright holders.

Correspondence between the parties attached to the complaint indicates that AEA

has rights to control public display of works created pursuant to the terms of a contract

between AEA and its member actors, presumably to ensure that its actors receive

royalties from any public display of their work.  (See Compl. Ex. B (email from D. Upp.

to R. Cabell, Sept. 7, 2007).)  In this case, it appears the AEA (through Mr. Upp) sent a

1

"takedown notice" to YouTube (pursuant to YouTube's "Copyright Infringement Notification" policy, see Compl. Ex. D) representing that Plaintiff's video, "Pretty Faces," was infringing because it was subject to an AEA contract. YouTube then removed or disabled access to the video, and sent Plaintiff a notification that it had done so. Plaintiff responded to YouTube and AEA with an email expressing anger that access to "Pretty Faces" and certain other videos had been disabled without prior notification to him.

Mr. Upp, on behalf of AEA, responded to Plaintiff, explaining that when he sent the takedown notice to YouTube, he believed that "Pretty Faces" was subject to an AEA contract. (Compl. Ex. B.) He also explained that he had since done some research and discovered that "Pretty Faces" was not, in fact, subject to an AEA contract. He also apologized to Plaintiff for the confusion.

It is now uncontested that Plaintiff owns the "Pretty Faces" copyright, and that the takedown notice was sent to YouTube in error.

On July 15, 2009, Plaintiff filed an action against AEA state court, based upon some or all of the above facts, alleging that Defendant "improperly blocked his proprietary material from being shown on YouTube." His complaint asserted causes of action for "property damage, loss of personal property, loss of time from work, loss of use of property, and personal injury." (Compl. Ex. C (Order Dismissing Plaintiff's Complaint, Index No. 16520/09, at 1 (N.Y. Civil Court Aug. 6, 2009) (Engoron, J.)).

Plaintiff's state law action was dismissed "on the grounds that it ha[d] been brought against an improper party, and for failure to state a cause of action upon which relief [could] be granted." Id. at 2. In dismissing Plaintiff's complaint, Judge Engoron

2

explained that "to the extent that plaintiff seeks redress on copyright claims, this court lacks subject matter jurisdiction, which lies exclusively in federal court." Id.

On December 11, 2009, Plaintiff filed his action in this Court. The causes of action asserted in his complaint included copyright infringement (relating to "Pretty Faces"), libel (relating to "Pretty Faces" and two other videos that were taken down), lost business opportunity, unlawful seizure of property, and tortious interference with contract relations.

On January 7, 2010, Defendant filed a motion to dismiss, arguing that Plaintiff fails to state a claim under the copyright laws because Plaintiff failed to allege that Defendant "copied" his work.

Because Defendant is correct, Plaintiff's complaint is dismissed.

## DISCUSSION

### I.     Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations, citations, and

3

alterations omitted). Thus, unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." Id. at 570; Iqbal, 129 S. Ct. at 1950-51.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 44 (2d Cir. 2003); see also Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007).

Finally, in deciding a motion to dismiss, this Court may consider the full text of documents that are quoted in or attached to the complaint, or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit. Rothman v. Gregor, 220 F.3d 81, 88-89 (2d Cir. 2000) (citing Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42 (2d Cir. 1991), cert. denied, 503 U.S. 960 (1992)); San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 808 (2d Cir. 1996).

## II.    Copyright Infringement

To demonstrate a prima facie case of copyright infringement, a plaintiff must allege: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original, Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991) (citing Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 548 (1985)), or "violation of one of the other exclusive rights afforded copyright owners pursuant to the Copyright Act" under 17 U.S.C. § 106, Byrne v. British Broadcasting Corp., 132 F. Supp. 2d 229, 232 (S.D.N.Y. 2001) (citation omitted). Section 106 grants copyright owners "exclusive rights to do and authorize any of the following":

4

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. § 106.

Here, Plaintiff has alleged that he is the owner of the copyright in "Pretty Faces" (see Compl. ¶ 12), and argues that Defendant violated his "exclusive rights" to distribute and publicly display the video under 17 U.S.C. § 106(3)&(5) (Mem. in Opp. to Mot. to Dismiss ("Pls. Br."), Feb. 24, 2010, at 2). Plaintiff acknowledges that Defendant never copied his work. (Id. at 2-3) Likewise, the parties agree that the Defendant neither distributed nor publicly displayed the Plaintiff's work. Rather, the gravamen of Plaintiff's copyright claim is that Defendant interfered with Plaintiff's rights to distribute and publicly display his work on YouTube by preventing him from publicly displaying it. Essentially, the Plaintiff's asserts a negative copyright claim—that Defendant interfered with his rights, *not* by affirmatively displaying or distributing copies of his works, but by preventing Plaintiff from displaying and distributing his works (insofar as Defendant sent a takedown notice to YouTube).

5

Plaintiff argues that he need not demonstrate that Defendant affirmatively copied, displayed or distributed his work in order to state a valid cause of action for copyright infringement under 17 U.S.C. §106. In crafting his argument he relies upon language from Byrne v. British Broadcasting Corp., 132 F. Supp. 2d 229 (S.D.N.Y. 2001), and Sandoval v. New Line Cinema Corp., 973 F. Supp. 409 (S.D.N.Y. 1997). In both of those cases, the courts stated that the standard for infringement requires, inter alia, either "unauthorized copying or a violation of one of the other exclusive rights afforded copyright owners pursuant to the Copyright Act." Byrne, 132 F. Supp. at 232; Sandoval, 973 F. Supp. at 412. Since the language from Byrne and Sandoval makes no reference to copying, distribution or another affirmative act, the Plaintiff opines that no affirmative act directly relating to the copyrighted material (e.g., copying, reproduction, distribution or authorization of one of those activities) is prerequisite to liability for infringement. Plaintiff is mistaken.

Neither Byrne nor Sandoval supports his claim, because both cases involved affirmative copying and reproduction of the plaintiffs' copyrighted works. See Byrne, 132 F. Supp. 2d at 232 (rebroadcast of song in television program); Sandoval, 973 F. Supp. at 410 (reproduction of photographs in motion picture). As far as this Court knows, no court has ever found copyright infringement under section 106 in the absence of an affirmative act relating to the copyrighted material. This Court declines to be the first.

A claim like Plaintiff's is appropriately raised under 17 U.S.C. § 512(f), which imposes liability upon any person who "materially misrepresents . . . (1) that material or activity is infringing." Section 512(f) provides that any such person:

6

> shall be liable for any damages, including costs and attorneys" fees,
> incurred by the alleged infringer, by any copyright owner or copyright
> owner's authorized licensee . . . who is injured by such misrepresentation,
> as the result of the service provider relying upon such misrepresentation in
> removing or disabling access to the material or activity claimed to be
> infringing, or in replacing the removed material or ceasing to disable
> access to it

17 U.S.C. § 512(f).

However, as a prerequisite to liability under section 512(f), a defendant must have *actual knowledge* that it is making a misrepresentation of fact. 17 U.S.C. § 512(f); see also Arista Records, Inc. v. MP3 Board, Inc., No. 00 Civ. 4660, 2002 WL 1997918, at *14 (S.D.N.Y. Aug, 29, 2002); accord Rossi v. Motion Picture Ass'n of America, 391 F.3d 1000, 1004-05 (9th Cir. 2004) (citations omitted) ("There must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner."). Plaintiff's complaint alleges no facts from which a court could find it facially plausible that Defendant knew it was misrepresenting the facts when it wrote to YouTube and stated that Plaintiff's "Pretty Faces" video was infringing. In fact, it alleges facts that negate any such inferences.

In pleading his claims for libel (not his copyright claim), Plaintiff states that Defendant was "negligent" because he did not "perform the proper due diligence to back up its claim that Plaintiff was a copyright infringer" before sending a takedown notice to YouTube. (Compl. ¶ 14.) But negligence is not the standard for liability under section 512(f). See Arista Records, 2002 WL 1997918, at *14. The only inference suggested by Plaintiff's contention of negligence is that, while Defendant should have known the real facts, he did not know them, and so lacked actual knowledge that it was misrepresenting Plaintiff's authority to post the video on YouTube.

7

Plaintiff confirms this view by attaching to his complaint an email sent by a

representative of AEA two days after AEA sent its takedown notice to YouTube. In that

letter, the AEA representative states in relevant part:

> I apologize for any error in this reporting; I have confirmed that the show
> Pretty Faces was not done under an Equity Contract, though it was
> reported to be one at the time. Part of our legal obligation is to shut down
> bootleg and other illegal recorded reproductions of productions with our
> members. Unfortunately in this day and age, the number of infractions are
> in the millions. The only possible way to monitor sites like youtube is to
> rely on public input. *The clips from Pretty face were submitted to me by*
> *someone claiming that it was done with Equity Actors; I took it blind faith*
> *that the person was correct.* In the little over a year, with 100,000's of
> clips removed from youtube, this is the first that was reported erroneous.

(Compl. Ex. B (emphasis added).)

The email on which Plaintiff relies states on its face that its author did not act with actual

knowledge when he sent the takedown notice to YouTube. Indeed, the email supports

Plaintiff's assertion that Defendant acted, at most, with negligence by failing to look into

the copyright control situation before sending the takedown notice to YouTube. Since

negligence is insufficient to impose liability under section 512(f), Plaintiff's copyright

infringement claim is dismissed.

## III.   Plaintiff's Remaining State Law Claims

Because plaintiff's copyright claim was the only alleged basis for federal subject

matter jurisdiction (plaintiff and defendant are both New York residents), the Court

declines to exercise jurisdiction over Plaintiff's remaining state law claims. See 28

U.S.C. § 1367(c)(3); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988)

("[I]n the usual case in which all federal-law claims are eliminated before trial, the

balance of factors . . . will point toward declining to exercise jurisdiction over the

remaining state-law claims.").

8

Accordingly, Plaintiff's Complaint is dismissed in its entirety. Plaintiff's federal claim is dismissed with prejudice. The claims under state law are dismissed without prejudice, except to the extent they are identical to any state law claims that were already dismissed by Judge Engoron.[1] See Order Dismissing Plaintiff's Complaint, Index No. 16520/09, at 1 (N.Y. Civil Court Aug. 6, 2009) (Engoron, J.).

## CONCLUSION

The Defendant's motion to dismiss (docket no. 3) is granted. The Clerk of the Court is instructed to remove the motion at docket no. 3 from the Court's outstanding motion list and to close the case.

This constitutes the decision and order of this Court.

Dated: March 12, 2010

_____
U.S.D.J.

BY ECF TO ALL COUNSEL

---

[1] Since no one provided this Court with a copy of Plaintiff's state court complaint, I cannot say whether any claim he asserts here is barred by res judicata.